# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

|  |  |
|---|---|
| BRIAN JAMES JUNGCLAUS,<br><br>*Plaintiff,*<br><br>v.<br><br>SYNGENTA CORPORATION, SYNGENTA SEEDS, INC., SYNGENTA BIOTECHNOLOGY, INC., AND SYNGENTA CROP PROTECTION, LLC,<br><br>*Defendants.* | Civil Action No. _____ |

## DEFENDANTS' NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1331, 1367, 1441(a), and 1446, defendants Syngenta Corporation, Syngenta Seeds, Inc., Syngenta Biotechnology, Inc., and Syngenta Crop Protection, LLC (collectively "Syngenta"), expressly reserving all rights otherwise to respond to this lawsuit, respectfully removes the above-captioned case from the Fourth Judicial District Court for Hennepin County, State of Minnesota to the United States District Court for the District of Minnesota.

## BACKGROUND

1.      On January 13, 2015, plaintiff commenced this lawsuit against Syngenta by serving a complaint for damages on Syngenta's registered agent for service of process.  *See* Minn. R. Civ. P. 3.01 ("A civil action is commenced against each defendant: (a) when the summons is served upon that defendant . . . .").  The complaint was captioned *Jungclaus v. Syngenta Corp. et al.*  See Compl., Case No. 27-cv-15-590 (filed Jan. 13, 2015) (attached as Exhibit A).

2.      Plaintiff is a commercial farmer who alleges that he was harmed when the Chinese government refused to allow imports of corn from the United States that included corn grown from Syngenta's U.S.-approved genetically modified corn seed, called Viptera. Plaintiff's complaint alleges that "China is a major destination for corn exported from the United States" and that he "has incurred losses, damage, and injury resulting from the rejection of United States grown corn by export markets" in light of China's actions.  Compl. ¶¶ 4, 8; *see also* Pl.'s Civil Cover Sheet, Ex. A ¶ 1 (describing the case as turning on Syngenta's conduct in releasing "Agrisure VIPTERA™ and Agrisure DURACADE™ for use in the United States' market prior to obtaining approval for purchase or consumption of VIPTERA or DURACADE corn *in China*" which "resulted in financial loss to the Plaintiff, including but not limited to a depression in corn prices") (emphasis added).  In particular, plaintiff contends that the "reduction and/or prevention of [imports of] United States corn into China" caused him to suffer "losses arising from the loss of export markets and price depressions." *Id*. ¶¶ 8-9; *see also id.* ¶ 38 ("Syngenta's conduct thus prevented the export of United States corn to China, causing depressed prices for corn producers in the United States, including Plaintiff.").

3.      Plaintiff's complaint thus makes clear that China's sovereign acts were the direct and immediate cause of his alleged injuries despite plaintiff's effort to impose liability on Syngenta, because those injuries would not have occurred but for China's actions in failing to approve Viptera for importation, rejecting shipments containing Viptera corn, and ultimately blocking U.S. corn.  As a result, plaintiff's effort to trace liability back to Syngenta will require him to prove that China's actions were foreseeable—that is, regular and lawful results under Chinese and international trade law, not unforeseeable actions that ignored regular procedures or violated international law.  Because evaluating foreseeability would require the court hearing

these claims to pass judgment on a foreign act of state, these "questions relating to an act of state are questions of federal law" under the federal common law of foreign relations. *Republic of Iraq v. ABB AG*, 768 F.3d 145, 165 (2d Cir. 2014).

4.      Indeed, plaintiff's complaint parrots the complaints in over 200 other cases against Syngenta concerning the same subject matter that have been transferred into an MDL proceeding in the United States District Court for the District of Kansas. *See* Transfer Order, Dkt. 193, *In re Syngenta AG MIR162 Corn Litig.*, MDL No. 2591 (J.P.M.L. Dec. 11, 2014). Concurrently with this Notice of Removal, Syngenta has designated this case to the Judicial Panel on Multidistrict Litigation as a tag-along action that should be transferred to the District of Kansas as part of the MDL.

## REMOVAL JURISDICTION

5.      Pursuant to 28 U.S.C. §§ 1441 and 1446, removal of this action is appropriate for the following reasons.

6.      Removal is timely under 28 U.S.C. § 1446(b). Syngenta has filed this Notice of Removal within thirty (30) days of when the summons and complaint were first served on Syngenta's registered agent for service of process in Minnesota on January 13, 2015. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348-49 (1999).

7.      Removal to this Court is proper because the Fourth Judicial District Court for Hennepin County, State of Minnesota, is located within the geographic reach of the U.S. District Court for the District of Minnesota. 28 U.S.C. § 1441(a).

8.      As required by 28 U.S.C. § 1446(a), Syngenta has attached to this notice "a copy of all process, pleadings, and orders served upon" it. More specifically, attached are the following documents: (a) plaintiff's complaint (Exhibit A); and (b) all process, pleadings and orders that have been served upon defendants (Exhibit B).

9.      Upon filing this Notice of Removal, Syngenta will provide written notification to plaintiff's counsel and will file a Notification of Removal (attaching a copy of this Notice of Removal) with the Fourth  Judicial District Court for Hennepin County, State of Minnesota.

## GROUNDS FOR REMOVAL

10.      Removal is proper because plaintiff's claims necessarily raise a substantial federal issue, which is actually disputed, concerning the federal common law of foreign relations.  The issue is capable of resolution in federal court without disrupting the federal-state balance approved by Congress, and  "there is a serious federal interest" in resolving such issues in a federal forum.  *Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013) (internal quotation marks omitted). This Court therefore has original federal-question jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1441(a).

11.      Federal common law includes "interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations."  *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 641 (1981); *see also Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 425 (1964) (concluding that "our relationships with other members of the international community must be treated exclusively as an aspect of federal law").  For this reason, federal-question jurisdiction exists if the resolution of such claims "necessarily require[s] determinations that will directly and significantly affect American foreign relations."  *Republic of the Phil. v. Marcos*, 806 F.2d 344, 352-54 (2d Cir. 1986).

12.      This is so because the United States Constitution reflects "a concern for uniformity in this country's dealings with foreign nations and indicat[es] a desire to give matters of international significance to the jurisdiction of federal institutions."  *Sabbatino*, 376 U.S. 398, 427 n.25 (1964). "In these instances, our federal system does not permit the controversy to be

resolved under state law . . . because the . . . international nature of the controversy makes it inappropriate for state law to control." *Tex. Indus.*, 451 U.S. at 641.

13.     Courts have emphasized that the federal common law of foreign relations encompasses disputes that implicate "foreign policy concerns"—thereby supporting federal-question jurisdiction even where, as here, plaintiff attempts to couch his claims in state-law terms. *Torres v. S. Peru Copper Corp.*, 113 F.3d 540, 542-43 (5th Cir. 1997); *accord, e.g., Pacheco de Perez v. AT&T, Co.*, 139 F.3d 1368, 1377 (11th Cir. 1998); *Republic of the Phil.*, 806 F.2d at 353-54 (emphasizing that "there is federal question jurisdiction over actions having important foreign policy implications").

14.     Despite plaintiff's effort to refer solely to state-law causes of action, the complaint alleges harm that occurred when China refused to allow the import of corn that is fully approved by the United States government.  The complaint repeatedly complains of the rejection of U.S. corn by China, as China's decision to reject the corn allegedly resulted in "the reduction and/or prevention of [imports of] United States corn into China and caused a depression in corn prices."  Compl. ¶ 9.  The complaint expressly contends that plaintiff "incurred losses, damage, and injury *resulting from* the rejection of United States grown corn by export markets"—namely, China.  *Id.* ¶ 8 (emphasis added); *see also id.* ¶ 38 (alleging negligence because "Syngenta's conduct [] prevented the export of United States corn to China, causing depressed prices for corn producers in the United States, including Plaintiff").

15.     The complaint thus necessarily implicates China's sovereign right to regulate the importation of genetically modified crops within its borders, because there is no way to decide the claims without assessing whether China's acts were lawful and thus foreseeable, or whether, instead, they were arbitrary or otherwise unlawful actions in violation of international trade laws.

For example, plaintiff's negligence claim requires proof that a risk was foreseeable: "if the danger is not foreseeable, there is no duty" owed to the plaintiff.  *Whiteford by Whiteford v. Yamaha Motor Corp., U.S.A.*, 582 N.W.2d 916, 918 (Minn. 1998).  Determining foreseeability will necessarily require resolving issues such as whether China's decision to delay approval of Viptera for importation reflected legitimate reasons that Syngenta should have anticipated or whether it was an arbitrary or otherwise unlawful action in violation of Chinese or international trade laws.  Asking a U.S. court to sit in judgment on a sovereign state's conduct necessarily implicates the federal common law of foreign relations.  *Cf. Sabbatino*, 376 U.S. at 425 (1964) (concluding that "our relationships with other members of the international community must be treated exclusively as an aspect of federal law").

16.     Moreover, the complaint seeks relief for alleged "losses, damage, and injury resulting from the rejection of United States grown corn by export markets" and thus points squarely to China's decisions and actions.  Compl. ¶ 8.  The element of causation therefore will require a determination of whether it was the Chinese government that was responsible for plaintiff's alleged damages, despite plaintiff's attempt to shift the blame to Syngenta in the complaint.  *See, e.g.*, *Watkins v. Greyhound Bus Lines, Inc.*, No. A04-150, 2004 WL 2049977, at *3 (Minn. Ct. App. Sept. 14, 2004) (in negligence action, an act of a third party "generally serves as an intervening cause sufficient to break the chain of causation" unless the third party's act was foreseeable); *Spitzak v. Hylands, Ltd.*, 500 N.W.2d 154, 157-58 (Minn. Ct. App. 1993) (holding that defendant was not liable for negligence where plaintiff alleged that a third party's illegal conduct caused its injuries because the third party's conduct was unforeseeable).

17.     Plaintiff's counsel himself has explained that plaintiff's harm was caused by China's rejection of Viptera corn, as it was only because of China's initial rejection of corn shipments in June 2013 that plaintiff's losses occurred:

> By rejecting the corn, China effectively increased corn supply, which **caused** corn prices to fall, Watts alleges. . . . Showing a chart of corn prices, [Mikal] Watts pointed to China's initial rejection of corn shipments in June 2013 as the beginning of the corn price collapse.[1]

18.     Because "there are essential elements of Plaintiffs' claims [that] . . . require the application and resolution of the federal common law regarding foreign relations, . . . [f]ederal question jurisdiction clearly exists." *See Sequihua v. Texaco, Inc.*, 847 F. Supp. 61, 62-63 (S.D. Tex. 1994) (noting that plaintiffs' claims of nuisance "require them as part of their prima facie case to challenge the policies and regulations of Ecuador, as well as the approvals from Ecuador that Defendants received").

19.     Whether or not the alleged rejection of plaintiff's corn was an impermissible trade restriction that violated international law also implicates important foreign policy concerns, and itself raises substantial questions of federal common law.  *See Sabbatino*, 376 U.S. at 401

---

[1] *See, e.g.*, *Farmers, lawyers to take on Syngenta*, Litchfield Independent Review (Dec. 25, 2014 1:45                                                                                                        a.m.), http://www.crowrivermedia.com/independentreview/news/business/article_d4358cb2-c148-5fbb-842b-31fc96ac22a1.html (emphasis added) (attached as Exhibit C).  The Court may consider these matters of public record in determining whether federal jurisdiction exists.  *See, e.g.*, *Dittmer Props., L.P. v. FDIC*, 708 F.3d 1011, 1021 (8th Cir. 2013) (emphasizing that in evaluating factual questions in determining subject-matter jurisdiction, courts may "additionally consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record," and other items) (internal quotation marks omitted).  Plaintiff's counsel's public statements also constitute "other paper" from which it may be ascertained that this case is removable under 28 U.S.C. § 1446(b)(3).  *See iGames Entm't, Inc. v. Regan*, No. Civ.A.04-CV-4179, 2004 WL 2538285, at *4 (E.D. Pa. Nov. 9, 2004) (press release can constitute "other paper" for purposes of removal).

(emphasizing that the "act of state doctrine" precludes judicial inquiry into "the validity of the public acts a recognized foreign sovereign power committed within its own territory").

20.     In short, because "the [Chinese] government has participated substantially in the activities for which [Syngenta] is being sued," federal-question jurisdiction exists under 28 U.S.C. § 1331.[2] *Torres*, 113 F.3d at 543.

## CONCLUSION

For the foregoing reasons, Syngenta removes this action from the Fourth Judicial District Court for Hennepin County, State of Minnesota, to the United States District Court for the District of Minnesota.

Dated: January 30, 2015                    Respectfully submitted,

*/s/ Thomas K. Klosowski*
Thomas K. Klosowski (#176321)
KUTAK ROCK LLP
U.S. Bank Plaza South
220 South Sixth Street, Suite 1750
Minneapolis, MN 55402-4513
Tel: (612) 334-5000
Fax: (612) 334-5050
Thomas.Klosowski@KutakRock.com

Douglas W. Peters (#347024)
KUTAK ROCK LLP
1650 Farnam Street
The Omaha Building
Omaha, NE 68102-2186
Tel: (402) 346-6000
Fax: (402) 346-1148
Douglas.Peters@KutakRock.com

*Counsel for Defendants*

---

[2] Even if federal-question jurisdiction is found over some rather than all of the plaintiff's claims, supplemental jurisdiction under 28 U.S.C. § 1367(a) exists "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *Id*.

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the foregoing document with the Clerk of this Court by using the CM/ECF system.  I also certify that a copy has been served on the following via U.S. mail, postage prepaid and properly addressed, this 30th day of January, 2015:

Markus C. Yira
YIRA LAW OFFICE, LTD.
102 Main Street, South
Suite 201
P.O. Box 518
Hutchinson, MN 55350
Tel: (320) 587-0305
Fax: (320) 587-0557

Daniel. M. Homolka
DANIEL M. HOMOLKA, P.A.
6400 Timber Ridge
Minneapolis, MN 55439
Tel: (612) 341-2433
Fax: (612) 341-2423

Mikal Watts
WATTS GUERRA, L.L.P.
4 Dominion Drive
Bldg. 4, Ste. 100
San Antonio, TX 78257
Tel: (210) 447-0500
Fax: (210) 447-0501
Email: mcwatts@wattsguerra.com


/s/ Thomas K. Klosowski
Thomas K. Klosowski